## W. B. MERSHON & CO. v. R. E. MORRIS, RECEIVER FRY-WALKER LUMBER COMPANY.

(Filed 25 May, 1908.)

1. **Appeal and Error—Facts Agreed—Exceptions—Procedure.**
   On an appeal from a judgment rendered upon an agreed state of facts no exception or assignment of error is necessary, as the appeal brings up the entire record and is an exception within itself.

2. **Corporations—Acts of Officers—Contracts to Purchase—Seal Unnecessary.**
   A president of a corporation has authority to sign an order for machinery for its use, wherein it is contracted that the title shall remain in the vendor until full payment has been made, and it is not necessary to affix the corporate seal thereto.

3. **Corporations—Acts of Officers—Presumptions—Evidence.**
   When the appropriate officer or agent of a corporation executes a contract in its behalf for the purchase of machinery for its use, which the corporation is lawfully authorized to make, a preceding authority for the act of the officer or agent is presumed, and evidence thereof from the records of the company is unnecessary.

4. **Corporations—Contracts—Receiver's Title.**
   Under a contract by a corporation to purchase certain machinery for its use, reserving the title in the vendor till paid, a receiver subsequently appointed takes only such title as the corporation had.

CASE AGREED, heard by *Justice, J.,* at chambers in RUTHERFORD, 24 December, 1907.

Parties plaintiff and defendant, having a question in difference which might properly become the subject of a civil action, and desiring to avoid the expense and delay of an action, have agreed upon the following case, which contains

all the material facts upon which the controversy depends, and herewith submit the same, with the request that the court render such judgment as may be proper in the premises. It is agreed:

1. That the Fry-Walker Lumber Company is a corporation duly chartered by the State of North Carolina prior to the dates mentioned herein, and that Robert E. Morris was duly appointed receiver of the Fry-Walker Lumber Company by an order of the Superior Court of Rutherford County in that certain action entitled *E. A. Walker et al. v. Fry-Walker Lumber Company,* and, as such, is authorized, empowered and directed to wind up and settle the business of said corporation, and to bring and defend actions when same are necessary in the furtherance of such settlement.

2. That on 17 September, 1906, the said Fry-Walker Lumber Company purchased from the plaintiff certain machinery at the price of $550, of which $200 was paid in cash on the delivery of the machinery purchased, and the balance, in two notes of $175 each, at five per cent. from date, to be due 15 November, 1906, and 15 January, 1907, and that there is still a balance of $176.50, with interest from 15 January, 1907, unpaid on said notes; that said machinery at the time of the appointment of the receiver was in the possession of said Fry-Walker Company and was being used by it, and was necessary to the proper operation of its plant; that at the time of the delivery of said machinery a paper-writing was made, which is hereto attached and made a part and parcel of this agreement, and marked "Exhibit A":

"W. B. MERSHON & Co.,

*Main Office and Works, Saginaw, Michigan.*

"Subject to strikes, accidents or other delays beyond your control, please ship in good order the following machinery, f. o. b. Saginaw, Michigan, about ......, at once......:

"One rebuilt Ideal band saw, complete, with blue-prints

148—4

and directions for setting up and operating, but without saw blades or filing-room equipment, for which we agree to pay, as below, after date of shipment, $550, with exchange. The purchaser agrees to make settlement within thirty days from date of shipment, and to then evidence all payments due at a later date by notes bearing date of shipment, with interest, as follows: $200 cash on delivery of machine; $175 by note bearing date of invoice, with interest at five per cent., maturing 15 November, 1906; $175 by note bearing date of invoice, with interest at five per cent., maturing 15 January, 1907. It is agreed that title to the property mentioned above shall remain in the consignor until fully paid for in cash, and that this contract is not modified or added to by any agreement not expressly stated herein; and that a retention of all the property forwarded after thirty days from date of shipment shall constitute a trial and acceptance, be a conclusive admission of the truth of all representations made for the consignor, and invalidate all its contracts of warranty, express or implied. It is further agreed that the purchaser shall keep the property fully insured for the benefit of W. B. Mershon & Co.

"Ship *via* . . . . . . . . . .

          (Signed)    "FRY-WALKER LUMBER Co.,
          "By H. W. FRY, *President and Treasurer.*

"In the presence of JOHN W. CALLAHAN."

Proven by the oath of the subscribing witness, and recorded.

3. It is agreed that the Fry-Walker Lumber Company is insolvent, its liabilities exceeding its assets by several thousand dollars. It is agreed that the Fry-Walker Lumber Company had no common seal and did not use any in the execution of its contract, and that the officers who signed "Exhibit A," attached, were the duly elected and acting officers of said corporation.

The plaintiff contends that, by reason of the foregoing paper-writing, set forth above and attached as "Exhibit A," it has a lien on the property mentioned therein which is prior to other creditors, who do not hold mortgages, and it should be fully paid the amount mentioned therein in preference to general creditors. The defendant contends that the said paper-writing does not constitute a lien on the property therein mentioned, and that plaintiff did not acquire any lien by reason thereof, but is only a common creditor, entitled to share equally with other common creditors in the assets of the aforesaid Fry-Walker Lumber Company.

This reference and agreement are made under Revisal, secs. 803 *et seq.,* and it is agreed that the court may render such judgment as to the aforesaid paper-writing as may be proper. If the same constitutes a lien the court may so adjudge, and if the same does not create a lien the court may so adjudge.

Duly verified.

His Honor rendered judgment for plaintiff. Defendant excepted and appealed.

No counsel for plaintiff.
*R. S. Eaves* and *J. P. Morris* for defendant.

CONNOR, J., after stating the facts: We concur with counsel for appellant that when a case is submitted upon an agreed state of facts or upon demurrer no exception or assignment of error is necessary. The appeal brings up the entire record, and is itself an exception. *Reade v. Street,* 122 N. C., 301; *Wilson v. Lumber Co.,* 131 N. C., 163, where the subject is discussed, the authorities cited, by the present Chief Justice.

A careful examination of these opinions will remove what seems to be some doubt in the minds of the profession upon the subject. We concur with his Honor in holding that the order, which includes the contract for the machine, was properly signed by the president. Womack Private Corp., 461. There was no necessity for the corporate seal. For the varied

transactions of a business or manufacturing corporation it would be impracticable to require every letter, order, contract, note, check or draft to have the corporate seal attached. The general rule, sustained by well-considered decisions, is thus laid down by Judge Thompson: "Excluding the operation of express statutes, a very extensive principle of the law of corporations, applicable to every kind of written contract executed ostensibly by a corporation and to every kind of act done by its officers and agents professedly in its behalf, is that, when the officer or agent is the appropriate officer or agent to execute a contract or do an act of a particular kind in behalf of the corporation, the law presumes a precedent authorization, regularly and rightfully made, and it is not necessary to produce evidence of such authority from the records of the corporation, always provided that the corporation itself had the power under its charter or governing statute to execute the contract or do the act." 10 Cyc., 1003.

The ancient rule that a corporation could act only by its seal has been greatly relaxed in later times, if, indeed, not wholly abrogated. *Ib.,* 1004; *Columbia Bank v. Patterson,* 7 Cranch, 299. The contract was simply an order for a machine, with the terms or proposition to purchase set out, among others that the title to the property was to remain in the vendor until paid for. It would be a singular result if the corporation or its receiver could retain the property thus coming into its possession without paying for it, and repudiate so much of the president's proposition as secured to the vendor payment of the purchase money because he did not put the corporate seal to the proposition to buy. If he had no authority to make the contract, or did not observe the form prescribed in doing so, no title passed to the corporation. By ratifying his act and taking the property it waived any informality, if there was any, in the form of making the contract.

It is immaterial whether the paper was recorded. The

GORDON CO. *v.* MORRIS.

receiver takes whatever title the corporation had, and nothing
more.   In no point of view is there any error in his Honor's
judgment.   It is
   Affirmed.