DUNES SOUTH HOMEOWNERS ASSOCIATION, INC., Plaintiff v. FIRST FLIGHT BUILDERS, INC., Defendant

No. 941SC116

(Filed 20 December 1994)

**1. Seals § 1 (NCI4th)— instrument not under seal—three-year statute of limitations applicable—summary judgment improper**

The three-year statute of limitations applied to bar certain of plaintiff's claims for maintenance fees on time share units, since the operative instruments had a corporate seal affixed, but lacked the requisite "specialty" language to make them sealed instruments to which the ten-year statute of limitations would apply.

**Am Jur 2d, Seals §§ 8 et seq.**

**2. Housing § 74 (NCI4th)— time share units—maintenance fees—meaning of unit weeks remaining unsold—summary judgment improper**

In an action to recover maintenance fees on time share units, the trial court erred in granting summary judgment for plaintiff where there was a genuine issue of material fact with regard to the meaning of "Unit Weeks then remaining unsold" in the con-

text of all the circumstances surrounding defendant developer's initial sale and reacquisition of time share units or unit weeks.

**Am Jur 2d, Condominiums and Co-operative Apartments § 34.**

Judge EAGLES dissenting.

Appeal by defendant from Order entered 30 November 1993 by Judge Thomas S. Watts in Dare County Superior Court. Heard in the Court of Appeals 4 October 1994.

On 17 February 1993, plaintiff Dunes South Homeowners Association, Inc. ("Association") filed an action for money judgment and to foreclose on a lien for maintenance assessments on South Dunes condominium units owned by defendant First Flight Builders, Inc. ("Developer"). In its answer, Developer "does not admit the validity of the liens claimed against such units for unpaid assessments nor the validity of the assessment amount." The Association then filed a Motion for Summary Judgment with an Affidavit setting forth the amount that Developer allegedly owes the Association. On 24 November 1993, defendant filed a Motion for Leave to Amend its Answer and an Amendment to Answer alleging that at least a portion of plaintiff's claim was barred by N.C. Gen. Stat. § 1-52(1), the three-year statute of limitations for filing an action based on a "contract, obligation or liability arising out of a contract. . . ." On that same day, Mr. Gerald Friedman, President of defendant corporation, filed an Affidavit stating the following:

. . .

2. That in August of 1980, I executed as president of First Flight Builders, Inc. the Declaration of Covenants, and Restrictions for Dunes South. . . .

3. At the time of the execution of the foregoing Declaration of Covenants and Restrictions, First Flight Builders, Inc. was the owner of the development known as Dunes South which is the subject matter of this action.

4. That on the 2nd day of August, 1982, I executed as president of First Flight Builders, Inc. the Supplemental Declaration of Covenants and Restrictions. . . .

5. Pursuant to the terms of the Supplemental Declaration of Covenants and Restrictions, First Flight Builders, Inc. was only

responsible for the actual operating expenses incurred by plaintiff in excess of the collections of assessments on units within Dunes South and was not responsible for paying per unit annual assessments on unit [sic] owned by First Flight Builders, Inc.

6. First Flight Builders, Inc. has paid all operating expenses which have been incurred by the plaintiff in excess of the collection of assessments on units within Dunes South for which plaintiff has made a demand.

7. The sums plaintiff alleges to be due are incorrect in that they represent a per unit assessment rather than the excess operating expenses as provided in the Supplemental Declaration of Covenants and Restrictions.

On 29 November 1993, an Order was entered allowing defendant's Amendment. On 30 November 1993, Judge Watts entered an Order allowing plaintiff's Motion for Summary Judgment. From this Order, defendant timely appealed.

*Aycock, Spence & Butler, by Charlie Aycock, for plaintiff-appellee.*

*Sharp, Michael, Outten & Graham, by Robert L. Outten, for defendant-appellant.*

ORR, Judge.

Dunes South is a condominium development in which units are sold by time share weeks. Defendant is the original developer of the Dunes South project and at the time of the institution of this action, had reacquired a number of interval ownership units or weeks within the development from time share owners to whom Developer had initially sold the units. On 7 August 1980, when Dunes South was originally developed, in accordance with § 47A of the North Carolina General Statutes, Developer filed the original "Declaration of Covenants and Restrictions" ("Declaration"). Subsequently, on 21 January 1983, Defendant filed a "Dunes South Supplemental Declaration of Covenants and Restrictions" ("Supplemental Declaration").

At issue in this appeal is whether, and how much, Developer owes the Association annual per unit maintenance assessments which developer admits he has not paid for units Developer initially sold and then reacquired. Resolution of these questions turns on the court's interpretation of provisions contained in the Declaration and

Supplemental Declaration dealing with the assessments. "Section 3. Assessments" of the Declaration provides that Developer as well as the other owners pay annual, per unit, maintenance assessments.

> (a) Commencing on the date of conveyance of the first Dwelling Unit in the Development and thereafter, the Developer, for each Dwelling Unit in the Development owned by the Developer, hereby covenants, and each subsequent Owner of any such Dwelling Unit by acceptance of a deed or other conveyance, shall be deemed to covenant and agree to pay to the Association: (1) annual assessments (maintenance charges), and (2) special assessments for capital improvement, such assessments to be fixed, established and collected from time to time as hereinafter provided.

Article III of the Supplemental Declaration specifically modified the original Declaration to state:

> (a) *With the exception of First Flight Builders, Inc., its successors and assigns, with respect to Dwelling Units and Unit Weeks remaining unsold,* each Time Share Owner shall pay, in addition to assessments for maintenance and improvements to the Common Areas, a prorata share . . . of all other costs incurred by the Management Firm and the Association in the maintenance, upkeep and operation of all Dwelling Units Committed to Time Share Ownership. . . . *First Flight Builders, Inc. shall be responsible for actual operating expenses in excess of the collections of said assessments to the extent that said excess would be otherwise payable for Unit Weeks then remaining unsold.*

Defendant assigns as error the trial court's granting of plaintiff's Motion for Summary Judgment on the grounds that plaintiff was not entitled to judgment as a matter of law because (1) plaintiff's claim or a portion of plaintiff's claim is barred by the statute of limitations as provided in N.C. Gen. Stat. § 1-52(1); (2) the Supplemental Declaration exempted defendant from payment of the sums alleged to be due; and (3) material issues of fact exist concerning the amount, if any, due from defendant to plaintiff.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56 (1990). "An issue is material if the facts

alleged would constitute a legal defense, or would affect the result of the action, or if its resolution would prevent the party against whom it is resolved from prevailing in the action." *Williams v. Paley,* 114 N.C. App. 571, 442 S.E.2d 558, 559, *disc. review denied,* 337 N.C. 699, 448 S.E.2d 541 (1994). All inferences are to be drawn against the moving party and in favor of the opposing party. *Id.*

## I.

**[1]** With respect to Developer's first assignment of error that the Association's claim or a portion of the Association's claim is barred by the three-year statute of limitations for "a contract, obligation, or liability arising out of a contract, express or implied" as provided in N.C. Gen. Stat. § 1-52(1) (Supp. 1994), we agree.

A cause of action accrues at the time of the breach which gives rise to the right of action. *United States Leasing Corporation v. Everett, Creech, Hancock, and Herzig,* 88 N.C. App. 418, 363 S.E.2d 665, *disc. review denied,* 322 N.C. 329, 369 S.E.2d 364 (1988). In this case, plaintiff is seeking recovery for annual maintenance assessments for the years 1986 through and including 1993. Plaintiff filed this action on 17 February 1993. The units that defendant owns and for which plaintiff seeks to recover maintenance fees, are not the original units owned by defendant, but are units which had been sold but were reconveyed to defendant. Plaintiff's cause of action against defendant would have accrued when defendant breached the contract with plaintiffs. This breach by defendant could only have occurred at the point that defendant reacquired the units. Defendant urges this Court to conclude that the question of whether the Declaration and Supplemental Declaration were sealed instruments and thus, had a ten-year statute of limitations is one for the jury and should not have been decided as a matter of law by the trial judge.

Defendant Developer argues that the operative instruments have a corporate seal affixed thereto, but since they are without language indicating an intention on their part that they be sealed instruments, the instruments are not under seal. On the other hand, the Association argues that the Declaration and Supplemental Declaration are sealed instruments and explicitly show that they were intended to be sealed instruments because Developer's corporate seal is affixed thereto, and more significantly, because the Notary Acknowledgment contained in the Declaration states as follows:

This is to certify that on the 7th day of August 1980, before me personally Gerald J. Friedman, with whom I am personally acquainted, who, being by me duly sworn, say that . . . he is the President, and Nancy Friedman is the Secretary of FIRST FLIGHT BUILDERS, INC., the corporation described in and which executed the foregoing instrument; that _he knows the common seal of said corporation; that the seal affixed to the foregoing instrument is said common seal, and the name of the corporation was sub-scribed thereto by the said President, and that said President and Secretary subscribed their names thereto, and said common seal was affixed, all by order of the Board of Directors of said corpo-ration, and that the said instrument is the act and deed of said corporation.

The Acknowledgement contained in the Supplemental Declaration is virtually the same. As noted, if the documents are "sealed instru-ments", they come under the purview of the ten-year statute of limi-tations provided for in N.C. Gen. Stat. § 1-47(2) (Supp. 1994).

There is no dispute that the corporate seal of the defendant is impressed upon the Declaration and the Supplemental Declaration. However, "the seal of a corporation is not in itself conclusive of an intent to a make a specialty [sealed instrument]." *Square D Company v. C.J. Kern Contractors, Inc.*, 314 N.C. 423, 426, 334 S.E.2d 63, 65 (1985). In *Square D Company*, our Supreme Court was confronted with the issue of whether the impression of a corporate seal on a con-tract would transform the contract into a specialty so that the ten-year statute of limitations under N.C. Gen. Stat. § 1-47(2) would apply. The Court stated that "the question to be answered in order to deter-mine whether the corporate seal transforms the party's contract into a specialty is whether the body of the contract contains any language that indicates that the parties intended that the instrument be a spe-cialty or whether extrinsic evidence would demonstrate such an intention." *Id.* at 428, 334 S.E.2d at 66. In concluding that the contract at issue did not evince any intention on the part of the parties to cre-ate a specialty, the court stated that

[t]he contract contains no language in the body which would indi-cate that the parties intended the contract to be a specialty. There is no language such as "I have hereunto set my hand and seal," "witness our hands and seals," or other similar phrases contained within the contract that would explicitly support plaintiff's asser-tion that the instrument is a specialty under seal. *See 68 Am. Jur.*

*2d, Seals* § 3-4 (1973). Neither is there any extrinsic evidence that would indicate the parties intended the instrument to be a specialty.

*Id.*

In *Blue Cross and Blue Shield of North Carolina v. Odell Associates, Inc.*, 61 N.C. App. 350, 301 S.E.2d 459, *disc. review denied,* 309 N.C. 319, 306 S.E.2d 791 (1983), this Court held that the trial court correctly granted summary judgment in favor of the corporate defendant because the evidence showed no intention to create a specialty. We reasoned that "[b]ecause routine use of a corporate seal is merely to demonstrate authority to execute a document, the mere presence of a corporate seal, without more, does not convert the document into a specialty." *Square D* Company, 314 N.C. at 429, 334 S.E.2d at 66 (quoting *Blue Cross and Blue Shield,* 61 N.C. App. at 362, 301 S.E.2d at 459).

We find *Square D Company* and *Blue Cross and Blue Shield* applicable to the instant case. Here, however, in addition to Developer's corporate seal being impressed on both of the documents, the Notary Acknowledgement, on which the Association's argument that the documents are under seal is based, states only that the impressed seal is the common seal of the corporation; that it was affixed by order of the Board of Directors; and that the instrument is the "act and deed" of the corporation. We conclude that, absent the requisite "specialty" language, there is no evidence that would tend to indicate that the parties intended that the Declaration and Supplemental Declaration be sealed instruments. Rather, the Acknowledgment merely shows Developer's authority to execute the documents. "[T]he determination of whether an instrument is a sealed instrument . . . is a question for the court", *Square D Company,* 314 N.C. at 426, 334 S.E.2d at 65, and therefore, we conclude, that as a matter of law, the Declaration and Supplemental Declaration are not sealed instruments. Thus, the three-year statute of limitations pursuant to N.C. Gen. Stat. § 1-52(1) applies and bars at least a portion of plaintiff's claim. Accordingly, the trial court's ruling on the Association's Motion for Summary Judgment in favor of the Association with respect to those portions of the Association's claim for unpaid assessments allegedly due between 1986 and 1990 was, as matter of law, error.

## II.

[2] Defendant's next assignment of error is that the trial court erred in granting the Association's Motion for Summary Judgment on the

ground that the Association was not entitled to judgment as a matter of law because the Supplemental Declaration explicitly exempts defendant from paying the unpaid assessments allegedly due. Upon review of the evidence and forecast of evidence presented to the trial court, viewed in the light most favorable to the defendant, we hold that the trial court did err in granting summary judgment in plaintiff's favor.

"A contract that is plain and unambiguous on its face will be interpreted by the court as a matter of law." *Cleland v. Children's Home, Inc.*, 64 N.C. App. 153, 156, 306 S.E.2d 587, 589 (1983). "If an agreement is ambiguous, on the other hand, and the intention of the parties unclear, interpretation of the contract is for the jury." *Id.*

Article III "Maintenance and Assessments Therefor" of the Supplemental Declaration provides that Developer pay for any operating expenses which were in excess of the collections of the per unit assessments "to the extent that said excess would be otherwise payable for Unit Weeks then remaining unsold."

It is in light of these circumstances that the words "remaining unsold" must be considered. While the words appear clear and unambiguous, their meaning is less certain when they are considered in the context of all the circumstances surrounding the Developer's initial sale and reacquisition of time share units or unit weeks. The president of defendant corporation states by Affidavit that Developer "was only responsible for the actual operating expenses incurred by plaintiff in excess of the collections of assessments on units ['remaining unsold'] and was not responsible for paying per unit annual assessments. . . ." Defendant argues in its brief that,

> [s]ince it is undisputed that defendant owns units within the Dunes South project, there cannot be a question that these units are "unsold". If they were "sold" units, defendant would not now own them. Since the units are "unsold" then by the specific provisions of Article III(a) of the Supplemental Declaration, defendant is exempted from paying the per unit annual assessment fee.

The Association, by Affidavit, distinguishes between units which were originally sold by Developer and those which were sold and then reacquired by Developer at a later date. The Association argues that the word "unsold" in Article III(a) only makes exception for original units still owned by Developer and that the units which were

initially sold and then reacquired by Developer, but now remain unsold, are not exempt from the assessment.

Because neither interpretation of the words "remaining unsold" can be said to be unreasonable as a matter of law, the provision must be treated as ambiguous. Ambiguities in contracts are to be resolved by the jury upon consideration of the "expressions used, the subject matter, the end in view, the purpose sought, and the situation of the parties at the time." *Id.* at 157, 306 S.E.2d at 590 (quoting *Silver v. Board of Transportation*, 47 N.C. App. 261, 268, 267 S.E.2d 49, 55 (1980)). Because a genuine issue of material fact exists with respect to defendant's intention, summary judgment was not appropriate. Summary judgment for plaintiff is thus vacated and the cause is remanded to Superior Court for further proceedings.

In light of the foregoing reasons, we need not address Developer's last contention that the trial court erred by entering summary judgment for the Association on the ground that there exists a genuine issue of material fact as to the amount, if any, due from Developer to the Association.

Vacated and remanded.

Judge McCRODDEN concurred prior to 15 December 1994.

Judge EAGLES dissents.

Judge EAGLES dissenting:

I respectfully dissent from Part II of the majority opinion which reverses summary judgment for the plaintiff based on interpretation of Article III, paragraph (a) of the Supplemental Declaration language.

The critical error in the majority opinion lies in its erroneous conclusion that the language quoted is ambiguous:

(a) With the exception of First Flight Builders, Inc., its successors and assigns, with respect to Dwelling Units and Unit Weeks remaining unsold, each Time Share Owner shall pay, in addition to assessments for maintenance and improvements to the Common Area, a prorata share . . . of all other costs incurred by the Management Firm and the Association in the maintenance, upkeep and operation of all Dwelling Units Committed to Time

Share Ownership. . . . First Flight Builders, Inc. shall be responsible for actual operating expenses in excess of the collections of said assessments to the extent that said excess would be otherwise payable for Unit Weeks then remaining unsold.

The majority finds the language ambiguous and accepts the contention that if the developer now owns the units, the units necessarily must be within the group of units and unit weeks described in the Supplemental Declaration as "remaining unsold," even though the units already have been sold by the defendant developer but, for whatever reason, have since been reacquired. To fully accept this specious logic, one must conclude that (1) all units and unit weeks owned now (whether once sold and reacquired or not) are available for sale, and (2) the word "remaining" in "remaining unsold" means nothing at all. Here the language "dwelling units and unit weeks remaining unsold" necessarily means units and unit weeks held by the developer which have not yet been sold and therefore remain in the developer's inventory of units and time share weeks available to be sold. No other meaning is even remotely likely.

Finally, if the developers who drafted the Supplemental Declaration intended, as defendant argues now, to include units and unit weeks once sold and subsequently reacquired, the appropriate all encompassing language would have been units and unit weeks "owned by the developer," not those "remaining unsold."

I vote to affirm the summary judgment except as barred by the statute of limitations.